| | |
|---|---|
| 1 | WO |
| 2 | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clara Frances Walker-Earnest, | No. CV-16-00642-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Clara Frances Walker-Earnest ("Walker-Earnest") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Walker-Earnest raises one issue on appeal: Whether the ALJ committed harmful error by finding that Walker-Earnest was not disabled where application of the agency's medical-vocational guidelines would direct a finding of disability. (Doc. 14). The Commissioner concedes that the ALJ's decision is not supported by substantial evidence. (Doc. 20 at 1). Thus, the only issue before the Court is whether this case should be reversed and remanded for an award of benefits, or for further administrative proceedings.

Before the Court are Walker-Earnest's Opening Brief, Defendant's Response, and Walker-Earnest's Reply. (Docs. 14, 20, & 21). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated

below, the Court finds that this matter should be reversed and remanded for further administrative proceedings.

## I. Procedural History

Walker-Earnest filed an application for Disability Insurance Benefits ("DIB") on August 25, 2012. (Administrative Record ("AR") 32, 78). Walker-Earnest alleged disability beginning January 5, 2012 based on hepatitis C, degenerative disc disease in the cervical and lumbar spine, arthritis, PTSD, anxiety, suicidal thoughts, homicidal thoughts, pain, stiffness, extreme fatigue, and balance issues. (AR 78–79). Walker-Earnest's application was denied upon initial review (AR 77) and on reconsideration (AR 93). A hearing was held on December 16, 2014 (AR 48), after which ALJ Larry Johnson found, at Step Four, that Walker-Earnest was not disabled because she was able to perform her PRW as computer data entry (AR 41–42). On July 29, 2016 the Appeals Council denied Walker-Earnest's request to review the ALJ's decision. (AR 1).

Walker-Earnest's date last insured ("DLI") for DIB purposes is December 31, 2016. (AR 78). Thus, in order to be eligible for benefits, Walker-Earnest must prove that she was disabled during the time period of her alleged onset date ("AOD") of January 5, 2012 and her DLI of December 31, 2016.

## II. Factual History[1]

Walker-Earnest was born on December 3, 1953, making her 58 at the AOD of her disability. (AR 78). Walker-Earnest earned a G.E.D. and a bachelor's degree. (AR 173). She worked for 18 years doing computer data entry for the county government. (AR 174, 184).

A. <u>Medical Testimony</u>

On February 24, 2013 Walker-Earnest saw Dr. Jeri Hassman for a physical medicine consultation. (AR 452). Walker-Earnest reported that she left her job because she had enough points to retire, plus she was becoming less sharp and having mid and

---

[1] While the Court has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the claim at issue in this appeal.

low back pain, pain down her right upper extremity, and pain down her right leg. (AR 452). Walker-Earnest also stated that she had PTSD from a very bad childhood and a very aggressive supervisor. Dr. Hassman documented an unremarkable physical exam of the cervical, thoracic, and lumbar spine, mild generalized weakness of both upper extremities, mild stiffness with ambulation, and multiple psychiatric conditions including PTSD, anxiety, and suicidal and homicidal thoughts. (AR 455). Dr. Hassman also completed a Medical Source Statement and opined that Walker-Earnest's conditions would not impose limitations for 12 months. (AR 456).

On March 19, 2013 Walker-Earnest saw Dr. Andrew Jones for a psychological evaluation. (AR 463). Walker-Earnest stated that she applied for disability because of anxiety, depression, and back pain, and that her last job ended because she retired. Dr. Jones noted that Walker-Earnest had low energy, dysphoric mood, and a flat affect, and scored 30 out of 30 on the Mini Mental State Exam. (AR 464). He diagnosed PTSD; major depressive disorder, recurrent, severe; back pain; hepatitis C; and neck pain. (AR 465). Dr. Jones also completed a Medical Source Statement and opined that Walker-Earnest's condition would impose limitations for 12 months. (AR 466). He found she had no limitations in understanding and memory, but that she was most likely moderately limited in her ability to complete a normal workday without interruptions from psychologically-based symptoms. Dr. Jones also stated that Walker-Earnest was moderately limited in her ability to respond appropriately to criticism from supervisors and in her ability to get along with coworkers.

A letter dated November 6, 2013 from Tides of Change Center of Wellness states that Walker-Earnest had been a client since January 2012 and that she continued to suffer from anxiety and depression and had panic attacks on a regular basis. (AR 468).

On November 25, 2013 nurse practitioner Kathleen Oldfather completed a Medical Assessment of the Patient's Ability to Perform Work Related Activity form. (AR 469). Oldfather opined that Walker-Earnest had severe impairments in the following areas: ability to relate to other people, degree of restriction of daily activities,

deterioration of personal habits, constriction of interests, understand, carry out, and remember instructions, respond appropriately to supervision and co-workers, respond to customary work pressures, perform complex tasks, repetitive tasks, and varied tasks, and complete a normal workday/workweek without interruption from psychologically-based symptoms. (AR 469–70). Oldfather also opined that Walker-Earnest had a moderately severe impairment in her ability to perform simple tasks, and stated that her limitations would last for 12 months or longer. (AR 470).

A health record dated November 6, 2014 from Dr. Sullivan and nurse practitioner Oldfather lists Walker-Earnest's active problems as: dissociative personality disorder, interpersonal problems, major depressive affective disorder recurrent episode, panic disorder, unspecified personality disorder, bipolar I disorder, and borderline personality disorder. (AR 548).

A letter dated November 23, 2014 from Twila R. Christman, LCSW, states that Walker-Earnest has been a client since January 2012 and suffers from anxiety and depression. (AR 547). Christman stated that Walker-Earnest continued to deal with her psychiatric issues and was making progress, but would continue to need treatment for an extended period of time.

On December 8, 2014 Dr. William Sullivan completed a Medical Assessment of the Patient's Ability to Perform Work Related Activity form. (AR 583). He found Walker-Earnest had mild impairment in the following areas: ability to understand, carry out, and remember instructions, and ability to perform simple tasks. (AR 583–84). He also found moderate impairment in the following areas: ability to relate to other people, restriction of daily activities, and ability to perform complex tasks, repetitive tasks, and varied tasks. He also found she had moderately severe impairment in the following areas: deterioration in personal habits, constriction of interests, ability to respond appropriately to supervision and co-workers, and ability to complete a normal workday/workweek without interruptions from psychologically-based symptoms. Dr. Sullivan further found that Walker-Earnest was severely impaired in her ability to respond to customary work

pressures, and stated that her limitations would last for 12 months or longer.

On December 15, 2014 Dr. Caryl S. Brailsford-Gorman completed a Pain Functional Capacity (RFC) Questionnaire. (AR 585). She reported that Walker-Earnest had moderately severe pain, defined as "pain seriously affects ability to function." As to whether the degree of pain could reasonably be expected to result from clinical or diagnostic findings, Dr. Brailsford-Gorman did not check "yes" or "no," but wrote "probably with anxiety overly amplicating [illegible]." She further opined that Walker-Earnest's pain was frequently severe enough to interfere with her attention and concentration, and that based on her subjective complaints and MRI findings, Walker-Earnest frequently experienced deficiencies of concentration, persistence, or pace. (AR 585–86).

Dr. Brailsford-Gorman also completed a Medical Assessment of Ability to Perform Work Related Physical Activities form. (AR 587). She noted that based on Walker-Earnest's subjective complaints, she had the following exertional limitations: occasionally and frequently lift less than 10 pounds, stand/walk less than 2 hours, sit less than 6 hours, and must alternate sitting with standing every 15 minutes. Dr. Brailsford-Gorman also reported that Walker-Earnest had no postural or environmental limitations, and was limited to occasionally using both hands for handling, fine manipulation, feeling, and reaching. (AR 588–89). Dr. Brailsford-Gorman stated that these limitations were supported by Walker-Earnest's report of her activities, and the MRIs of her cervical and lumbar spine. (AR 589).

B. State Agency Findings

On March 27, 2013 DDS examiner Victoria Wall made an initial determination that Walker-Earnest was not disabled. (AR 77). Wall noted that a finding about capacity for PRW was not made, but that "this information is not material because all potentially applicable Medical-Vocational guidelines would direct a finding of 'not disabled' given the individual's age, education, and RFC. Therefore, the individual can adjust to other work." (AR 90). Wall further opined that Walker-Earnest could perform work where

interpersonal contact was incidental (such as assembly work), where "tasks should be no more complex than those learned and performed by rote, with few variables and little judgment, and supervision required is simple, direct, and concrete. This constitutes unskilled work." (AR 91). Wall further noted that Walker-Earnest had no physical restrictions, that she could not perform her PRW and the skills did not transfer, and that there were other sedentary jobs that did not exceed her functional assessment.

Dr. Howard Atkins completed a psychiatric review and opined that Walker-Earnest's mental impairments were severe. (AR 86). He found that Walker-Earnest had mild restrictions in ADL, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (AR 86–87). Dr. Atkins opined that Walker-Earnest had no limitations in understanding and memory but did have sustained concentration and pace limitations. (AR 89). Specifically, she was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruption from psychologically based symptoms. Dr. Atkins also found that Walker-Earnest was moderately limited in her ability to interact with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers, and maintain socially appropriate behavior. (AR 89–90). Dr. Atkins concluded that Walker-Earnest retained the capacity to understand, remember, and carry out detailed and complex instructions, relate appropriately to coworkers, supervisors, and the general public on a brief and superficial basis, utilize reasonable judgment in a work setting, and sustain the level of attention and concentration necessary to complete a routine workday without significant interruptions from psychologically-based symptoms. (AR 90).

On reconsideration, Walker-Earnest was again found not disabled on September 6, 2013. (AR 93). DDS examiner Stephen Dellinger again noted that a finding about Walker-Earnest's capacity to perform her PRW was not made, but that she could adjust to other work. (AR 107). Dellinger opined that Walker-Earnest was not limited to

unskilled work, and that she could perform semi-skilled work where interpersonal contact was routine but superficial (such as grocery checker), where tasks would be no more complex than those learned by experience, and where little supervision was required for routine tasks but detailed supervision was required for non-routine tasks. (AR 108–09). Dellinger further noted that Walker-Earnest could not perform her PRW and that the skills did not transfer, but that there were other sedentary, unskilled jobs she could perform. (AR 109). Dr. Jerry Henderson reaffirmed Dr. Atkins' psychiatric assessment (AR 104, 106–07).

C. Plaintiff's Testimony

On a Disability Report dated October 19, 2012 Walker-Earnest reported that her last job was doing computer data entry work for the government. (AR 174). She spent 7.5 hours of the workday sitting, walking, and standing, and 8 hours writing, typing, or handling small objects. She also spent 25% of her time supervising one other person. On a Work History Report, Walker-Earnest stated that she spent 1 hour per day supervising one other person. (AR 185). On both forms she reported that her job required technical knowledge and skills, writing and completing reports, and that she used machines, tools, or equipment. (AR 174, 185).

D. ALJ's Findings

The ALJ found that Walker-Earnest had the severe impairments of hepatitis C, osteoarthritis, degenerative disc disease, affective disorder, and anxiety disorder. (AR 34). The ALJ noted that these impairments constituted more than slight abnormalities and caused more than a minimal effect on Walker-Earnest's ability to do work activities.

The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The ALJ found Walker-Earnest had mild restrictions in ADL, moderate difficulties in social functioning, mild difficulties maintaining concentration, persistence, or pace, and had no episodes of decompensation of an extended duration. (AR 35–36). Because Walker-Earnest did not have at least two "marked" limitations, the Paragraph B

criteria were not satisfied.[2]

The ALJ gave substantial weight to the state agency reviewing physician's assessment, to the extent that the opinion supported the ALJ's RFC assessment. (AR 41).

The ALJ gave great weight to Dr. Hassman's opinion because it was consistent with the totality of the evidence at the time of the evaluation. (AR 41).

The ALJ gave partial weight to Dr. Jones' opinion because it was only partially consistent with the evidence of record. (AR 41). The ALJ specifically noted that although Walker-Earnest had conflicts with another individual at her last job, it was not indicative of an inability to function in a job setting in computer data entry.

The ALJ gave little weight to nurse practitioner Oldfather's opinion because it was too restrictive and not supported by her treatment notes. (AR 41).

The ALJ gave partial weight to Dr. Sullivan's opinion because it was overstated and not consistent with the treatment records, and partial weight to Dr. Brailsford-Gorman's opinion because it was based entirely on subjective complaints. (AR 41).

The ALJ found that Walker-Earnest had the RFC to perform the full range of light work: she could sit for 6 hours; walk/stand for 6 hours; understand, remember, and carry out detailed and complex instructions; relate appropriately to co-workers, supervisors, and the general public on a brief and superficial basis; and sustain the level of attention and concentration necessary to complete a routine workday of detailed and complex tasks without significant interruptions from psychologically-based symptoms. (AR 36).

The ALJ found that Walker-Earnest could perform her PRW doing computer data entry as generally performed. (AR 41–42). The ALJ therefore concluded Walker-Earnest was not disabled. (AR 42).

### III. Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S.

---

[2] To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.

- 8 -

458, 460–462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

Here, Walker-Earnest was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. An RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

**IV. Analysis**

The limited issue in this appeal is whether this matter should be remanded for further administrative proceedings or for an award of benefits. Walker-Earnest argues

that, "[a]ssuming the agency's own findings, Walker-Earnest is entitled to a finding of disability based on the agency's own regulations, the medical vocational guidelines, commonly known as the 'grids,' 20 C.F.R. Pt. 404, Subpt. P, App. 2." (Doc. 1 at 3). Walker-Earnest states that she grids at 202.06 on Table No. 2, which directs that where a person is of advanced age, has a high school education or more that does not provide for direct entry into skilled work, and who did skilled or semiskilled work but does not have transferrable skills, then the person is disabled. *Id.* Walker-Earnest claims that at both the initial and reconsideration levels, the state agency found that she could not perform her PRW and that she did not have transferrable skills. *Id.* at 5. Walker-Earnest further argues that the ALJ mischaracterized her PRW as only data entry, because the work was more complex than just data entry and it also included supervision. *Id.*

The Commissioner concedes that the ALJ's decision is not supported by substantial evidence, but argues that the proper remedy is to remand for further administrative proceedings because the ALJ failed to either call a vocational expert ("VE") or consult the Dictionary of Occupational Titles ("DOT") when he made his Step Four finding that Walker-Earnest could perform her PRW as generally performed. (Doc. 20 at 3). Thus, the Commissioner argues, because the ALJ did not make clear what the requirements of computer data entry are as generally performed, the ALJ did not make sufficient findings to determine whether Walker-Earnest could perform this job. *Id.* The Commissioner contends that testimony from a VE is needed to determine whether Walker-Earnest can perform either her PRW or adjust to other work. *Id.* at 4. The Commissioner further argues that VE testimony is required to determine whether Walker-Earnest has any transferrable skills before the grids can be applied to result in a finding of disability. *Id.* at 5. The Commissioner concludes that remanding for an award of benefits would be improper where there is no VE testimony and no job identified in the DOT, where no Step Five finding was made because the ALJ found Walker-Earnest not disabled at Step Four, and because VE testimony is required to determine whether Walker-Earnest has any transferrable skills. *Id.* at 5.

A. <u>Grids</u>

"In determining whether a claimant is disabled, the ALJ will usually refer to the grids . . . . The grids correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). "The grids are applied at the fifth step of the analysis under 20 C.F.R. § 404.1520." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). As explained by the court in *Tacket v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999):

> The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids categorize jobs by their physical-exertional requirements . . . Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.
>
> This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims.

(internal citations omitted). However, "[t]he ALJ may rely on the grids alone to show the availability of jobs for the claimant 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" *Id.* at 1102 (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). If the claimant suffers from non-exertional limitations not contemplated by the grids, then the ALJ must call a VE at Step Five to determine whether the claimant is disabled. *Id.*

At the hearing before the ALJ, Walker-Earnest's attorney noted the following:

> I wanted to point out the grids issue. . . . if she's limited to sedentary work and unskilled work with the mental health, then she grids. So her past relevant work is sedentary, but it's- - I'm going to assume our VE is going to talk to us about a higher skill level that was government data . . . entry . . . if she's limited to sedentary, unskilled work, she grids. She's 55 plus.

(AR 50–51). The ALJ then commented: "If this is one of those cases where she can't do her past work, then there probably isn't any other work out there and the grids are going to take the case away." (AR 51).

Later in the hearing, the ALJ stated:

> Well, this is one of those cases where the VE's not going to help me a heck of a lot so -- because she can't do her past work pretty much . . . it sounded like it was pretty skilled. . . . what I'm saying is, her work was skilled -- So I guess what it boils down to if she can't do her past work, then the grids are going to pretty much take the case away so I've just got to look through it and see what I think of the case.

(AR 75). At the ALJ's request, Walker-Earnest's attorney stipulated that her past work was skilled work. (AR 75).

In his written decision, the ALJ found that Walker-Earnest was limited to brief and superficial contact with coworkers, supervisors, and the general public—a non-exertional mental impairment. *See Cooper*, 880 F.2d at 1155 n.7. "[W]here a person with exertional and non-exertional limitations is 'disabled' under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately." *Lounsburry*, 468 F.3d at 1116. Thus, if Walker-Earnest were to be found not disabled based on the grids, the ALJ would need to separately consider how the limitation to superficial contact with coworkers, supervisors, and the public might impact her ability to work. *See Lounsburry*, 468 F.3d at 1115 ("the grids are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ('exertional limitations'); they may not be fully applicable where the nature of a claimant's impairment does not result in such limitations ('non-exertional limitations'). The reason for this limitation on the grids' application is that, despite having the residual functional capacity to perform a full range of unskilled occupations at a given exertional level, a claimant may not be able to adjust to these jobs because of non-exertional limitations. . . . non-exertional impairments . . . may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids." (internal

quotations omitted)); *but see Lounsburry*, 468 F.3d at 1115 n.2 ("*Tackett's* bar on exclusive reliance on the grids is limited by its requirement that the nonexertional impairments invoked must be significant enough to limit further the range of work permitted by exertional limitations before precluding application of the grids.").

Here, it is unclear whether the ALJ's finding that Walker-Earnest was limited to brief and superficial contact with supervisors, coworkers, and the public is a non-exertional impairment significant enough to limit the range of work available to her such that application of the grids would be inappropriate. Thus, the undersigned finds that remand for further proceedings is appropriate so that a VE may testify as to whether Walker-Earnest's non-exertional impairments would require a finding of disability.

B. Transferability of Skills

Walker-Earnest contends that she grids at Rule 202.06, but that rule assumes that the claimant does not have any transferrable skills. If Rule 202.06 applies, then the claimant is found disabled and the inquiry stops. Conversely, the Commissioner contends that no transferability finding has been made here, and that if Walker-Earnest does have transferrable skills, Rule 202.07 applies and mandates a finding of not disabled.

Although both of the DDS examiners noted on the initial and reconsideration decisions that Walker-Earnest had no transferrable skills, the ALJ did not make any specific findings during the hearing or in his written decision as to whether Walker-Earnest had transferrable skills or not. Without a specific finding by the ALJ on this issue, the Court is unable to determine whether Rule 202.06 or Rule 202.07 applies.[3]

---

[3] The undersigned also notes that in *Lounsburry*, 468 F.3d at 1116–17, the court found that although the claimant gridded at Rule 202.07,

> The ALJ misapplied Rule 202.07 by failing to consider fully the effect of Rule 202.00(c). Footnote (2) to Rule 202.07 explicitly incorporates language from Rule 202.00(c) that expands the circumstances under which claimants with transferrable skills can be found disabled. Rule 202.00(c) provides:
>
> (c) However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or

Accordingly, remand for further proceedings is appropriate so that the ALJ can take testimony from a VE as to whether Walker-Earnest has any transferrable skills.

C. Past Relevant Work

In addition to Walker-Earnest's argument that the grids mandate a finding of disability, she also argues that the ALJ's finding that she could return to her PRW doing computer data entry is inconsistent with the ALJ's finding that she was limited to interacting with coworkers, supervisors, and the general public on a brief and superficial basis because her PRW included supervising others. (Doc. 14 at 6; AR 36).

Pursuant to SSR 00-4P, "[i]n making disability determinations, [the Commissioner relies] primarily on the DOT . . . for information about the requirements of work in the national economy." *Id.* at *2. The DOT is used at Steps Four and Five of the sequential evaluation process, and VEs are most often used to provide evidence at a hearing before an ALJ. *Id.* Because the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings[,]" a VE can "provide more specific information about jobs or occupations than the DOT." *Id.* at *3. Where the ALJ's Step-Four finding rests on a determination that a

---

who have *only skills that are not readily transferrable to a significant range of semi-skilled or skilled work* that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work *warrant a finding of disabled*.

(emphasis added)

Under Rule 202.00(c), although Lounsbury has some transferrable skills, she will be disabled if those skills "are not readily transferrable to a significant range of semi-skilled or skilled work."

The court then determined that the claimant's skills would not transfer to a significant range of work, and thus Rule 202.00(c) directed a finding of disability.

In the present matter, following the court's reasoning in *Lounsbury*, the ALJ must first determine whether Walker-Earnest has transferrable skills and correspondingly whether she grids at Rule 202.06 or Rule 202.07. If Walker-Earnest does have transferrable skills, she will still be found disabled unless those skills are readily transferrable to a significant range of work.

claimant can perform her PRW as generally performed, the ALJ must consult either the DOT or a VE to determine the "'functional demands and job duties of the occupation as generally required by employers throughout the national economy.'" *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61). Further, while "the best source for how a job is generally performed is usually the [DOT,] . . . '[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable.'" *Id.* at 845–46 (quoting SSR 82-61).

Here, in the ALJ's written decision, he found that Walker-Earnest was not disabled because she was capable of performing her PRW doing computer data entry, as that work is generally performed. (AR 41). However, the ALJ did not classify the exertional or skill requirement of this work, nor did he cite any testimony from the VE in support of this finding (as there was no VE testimony), or any provision in the DOT. Thus, there is no testimony or other evidence cited in the ALJ's decision as to what the requirements of computer data entry are, and whether this work requires supervising others, or even whether Walker-Earnest's PRW is properly classified as computer data entry work.

While Walker-Earnest focuses on the fact that her past work involved supervising others, the ALJ found that she could perform her PRW as *generally* performed, not *actually* performed. *See Pinto*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work . . . "). It is certainly possible that computer data entry work (assuming this is the correct description of Walker-Earnest's PRW), as generally performed, does not include supervisory responsibilities and involves only brief and superficial contact with others. However, because the ALJ failed to take any VE testimony on this issue or cite any applicable provision in the DOT, the undersigned cannot determine whether the ALJ's finding that

Walker-Earnest could perform her PRW as generally performed is inconsistent with the finding that she was limited to brief and superficial contact with others. Accordingly, remand for further proceedings is required.

**V.     Conclusion**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (*quoting Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir.1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings.... Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id.* (citations omitted); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm. Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the

passage of time." *Treichler v. Comm. Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04.

In this case, significant factual issues remain that make remanding for an award of benefits inappropriate. First, because there was no testimony from a VE or citation to the DOT, it is unclear whether the ALJ properly classified Walker-Earnest's PRW as computer data entry. Likewise, it is unclear what the exertion and skill requirements of that work are, and whether Walker-Earnest was able to perform it as generally performed. Second, the ALJ failed to make a finding as to whether Walker-Earnest has transferrable skills or not, which prevents this Court from determining whether grid rule 202.06 or 202.07 applies. Third, because the ALJ determined that Walker-Earnest was not disabled at Step Four, there was no Step Five finding made. If Walker-Earnest cannot perform her PRW but does have transferrable skills, then VE testimony is required to determine whether those skills are readily transferrable to a significant range of other work existing in the national economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999) ("There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines . . ."). While "[t]estimony of a VE . . . as to the claimant's particular limitations is not an absolute-requirement if it is clear from the record that the claimant is unable to perform gainful employment in the national economy," in this case the Court finds that the record is not clear and further administrative proceedings are required. *Stewart v. Colvin*, 16 F.Supp.3d 1209, 1217 (D. Or. April 15, 2014) (internal quotations

and citation omitted); *see also Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) ("[N]o vocational expert has been called upon to consider all of the testimony that is relevant to the case . . . [and] in cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." (internal quotations and citation omitted)); *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995) ("the use of vocational experts is particularly important where 'the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue'" (quoting 20 C.F.R. § 404.1566(e))); *Treichler*, 775 F.3d at 1105 ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision in regard to Plaintiff's applications for disability insurance benefits under Title II of the Social Security Act be REVERSED and REMANDED to the Commissioner of Social Security for further administrative proceedings consistent with this decision, including a new hearing and a new decision.

This Court hereby reverses the Commissioner's decision under sentence four of 42 U.S.C. §405(g) with a remand of the cause to the Commissioner for further proceedings. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

**IT IS FURTHER ORDERED** the Clerk of the Court shall enter judgment, and close its file on this matter.

Dated this 18th day of October, 2017.

_____
Eric J. Markovich
United States Magistrate Judge